# SUFFOLK COUNTY.*

## JOHNSON WARREN *vs.* FITCHBURG RAILROAD COMPANY.

Crossing a railroad track without looking to see if a train is coming is not conclusive proof of a want of care; and if it appears that there is a double track, and a person has just bought a ticket at a station for a train which is to pass upon the further track, and the station agent says to him, " The train is coming; we will cross over," and he attempts to follow the agent, upon the premises of the railroad company, to take his place in the train, which meanwhile has arrived, and, in crossing over the nearer track for that purpose, is struck by a train coming from the other direction, and partially behind him, which he did not look for or see until too late to save himself, it is proper to submit it as a question of fact for the jury to determine whether he was careless.  And while so going from the ticket office to take his seat in the cars he is to be considered as a passenger, and is entitled to the rights of a passenger; and it is the duty of the railroad company to use the utmost care and diligence in providing for him a safe and convenient way and manner of access to the train, and in preventing the interposition of any obstacle which would unreasonably impede him or expose him to harm while proceeding to take his seat in the cars, in order to prevent those injuries which human care and foresight can guard against.

TORT to recover damages for a personal injury received by the plaintiff, by being run over by the defendants' locomotive engine.

At the trial in this court, before *Merrick*, J., it appeared that on the 7th of August 1854 the plaintiff, who resided at East Boston, went to Somerville upon the defendants' railroad, and in the afternoon of that day returned to the station at that place and purchased a ticket for Boston, and waited in the station for the arrival of the train from Lexington, in which he was to be carried.  There were two tracks in front of the station, and the train from Lexington was to come down upon the track which was furthest from the station.  When the whistle was heard, as this train was approaching the station, Mr. Bonner, the station agent, said to the plaintiff, " The train is coming; we will cross over."  Mr. Bonner and another passenger then did cross over to the platform upon the other side of the track, and reached there before the train arrived.  The plaintiff immediately followed them, but did not come out of the station on to the platform in front of it until the train had arrived and

---

* METCALF and MERRICK, JJ., did not sit in the cases for this county.

stopped.   When he was about to step upon the rail of the track nearest to the station, he was struck by the engine of a freight train from Boston, and received the injury for which he claims to recover damages.   The engineer upon the freight train testified that it was going at the rate of nine or ten miles an hour, and that the whistle was blown and the bell rung in the manner usual when approaching the station.

The plaintiff testified, amongst other things, that he had never been on that railroad before; that, as soon as the station agent said, " We will cross over," he took up a small box which he had with him and started for the train; that in crossing the platform in going to the cars he did not go in a direct course, but a little obliquely, from Boston; that he looked to see where he should get into the cars, and as he was stepping from the platform he saw the train coming from Boston, and instantly after that the sound of the whistle struck his ear; that the train was then twenty or thirty feet from him, and he had not time to save himself; that he had no intimation whatever that the train from Boston was coming; that he did not recollect that he looked towards Boston at any time after he came out of the station, until he was stepping on to the rail of the track; and that on the outside of the platform he could see an approaching train at a distance of thirty or forty rods.   There was other evidence to show that a train coming from Boston could be seen from any part of the platform, at a much greater distance.

When the plaintiff's evidence was in, the defendants requested the court to rule that the plaintiff had not proved that he was in the exercise of due care at the time of the occurrence of the injury; but that, taking his own testimony to be true, (and it was not contradicted or varied in any particular in reference to this question,) it ought to be determined, as a matter of law, that he was not in the exercise of .due care.   But the judge declined so to rule, or to order a verdict for the defendants.

When the evidence on both sides was all in, the testimony of the plaintiff, as to his not having looked down the track towards Boston before stepping upon the track in season to avoid · the approaching train, not having been contradicted or varied by

any other evidence, the defendants renewed their motion; but the judge declined to sustain it.

The defendants then asked the court to instruct the jury as follows:

" That if the jury shall find that the plaintiff stood upon the platform of the defendants' station, or passed from the station across the platform, and attempted to cross the tracks of the defendants' railroad, to enter the Lexington train for Boston, without looking to see whether there were any obstructions upon the track or any train approaching, when he had full opportunity to see any approaching train, he was guilty of a want of ordinary care, which would prevent his recovery; and the jury should return a verdict for the defendants.

" That inasmuch as the plaintiff himself stated upon the witness stand, and admitted, that he stepped from the platform of the depot upon the defendants' track to cross over to enter the Lexington train without looking to see whether there was any train approaching, and when by looking he could have seen the train, he was guilty of a want of ordinary care, which would prevent his recovery in this case; and the jury should be instructed to return a verdict for the defendants."

The judge declined so to rule, and, instead thereof, instructed the jury that the defendants, being common carriers, were bound, in the carriage of passengers for hire, to use the utmost care and diligence in the providing of safe, sufficient and suitable engines, cars, conductors, managers and other necessary laborers, in order to prevent those injuries which human care and foresight can guard against; that a person who had purchased a ticket entitling him to a passage on a particular train was to be considered, while passing from the office or place of business where the purchase was made to the train, to take his seat in one of the cars of which it consists, as a passenger; and that the defendants were bound to exercise the same degree of care in providing for him a safe and convenient way and manner of access to the train, and in preventing the interposition of any obstacle or obstruction which would unreasonably impede him or expose him to harm and injury while proceeding to take

his seat in the cars, as in the subsequent transportation and carriage of him; but that, if the defendants failed in any respect to use and exercise this due care, still the plaintiff could not and was not in law entitled to recover, unless he proved also, the burden of proof being upon him, that he himself, at the time of the occurrence of the injury which he sustained, was in the exercise of due care; and that due care is such a degree of care as persons of ordinary prudence and discretion would and do use when they are mindful and attentive, and mean to protect themselves against any danger to which they are exposed.

The jury returned a verdict for the plaintiff, with damages in the sum of $5750; and the defendants alleged exceptions.

*J. G. Abbott & H. C. Hutchins,* for the defendants.

*G. A. Somerby & S. B. Hahn,* for the plaintiff.

HOAR, J. The plaintiff could not recover unless he was himself using due care at the time when he received the injury, even if the carelessness of the defendants occasioned it. And the burden of proof was upon him to show that he used this care. So much is clearly settled.

In several recent cases it has been held that, if the whole evidence introduced by the plaintiff has no tendency to show care on his part, but on the contrary shows that he was careless, it is the duty of the court to direct the jury, as matter of law, to return a verdict for the defendant. *Lucas* v. *New Bedford & Taunton Railroad,* 6 Gray, 64. *Gahagan* v. *Boston & Lowell Railroad,* 1 Allen, 187. *Todd* v. *Old Colony & Fall River Railroad,* 3 Allen, 18. *Wilson* v. *Charlestown, ante,* 137.

We should have no doubt, if the evidence in the case at bar had disclosed nothing more than that the plaintiff crossed a railroad track, with due notice of its existence, and without looking to see whether a train were approaching, that the principle of those cases would be applicable to this. Such evidence, with nothing to explain or qualify it, would not have shown the exercise of due care, but the contrary.

But we are of opinion that the other facts which appeared in evidence had a very important bearing upon the propriety of

the plaintiff's conduct, and that all the circumstances taken together presented a case which was proper to be submitted to the jury, and which the court could not rightfully withdraw from their consideration.

It was shown that the plaintiff had purchased his ticket entitling him to a passage to Boston, and was waiting in the passenger station for the arrival of the train; that when the whistle of the approaching train was heard, the station agent, employed by the defendants, said to him, "The train is coming; we will cross over." Upon receiving this information and direction, the plaintiff followed the station agent from the room, across toward the train, which had arrived and stopped before he came out on the platform. The path by which he went to the train was somewhat oblique, so that the engine which struck him came in a direction partially behind him. Whether, in this condition of things, in his anxiety seasonably to reach the train, which would stop but a moment, the plaintiff, at a station with which he was not familiar, would have been likely to be thrown off his guard by the direction to cross over, given without any caution or qualification; whether he might naturally, and without subjecting himself to the imputation of want of care, have considered himself under the charge of the defendant's agent, with an assurance that it was safe and proper to go directly to the cars, were questions for the jury, and not for the court. They were submitted to the jury, with instructions which were appropriate and sufficient, and to which, in the opinion of this court, the defendants had no just ground of exception.

The next exception taken was to the instruction given to the jury "that a person who had purchased a ticket entitling him to a passage on a particular train, was to be considered, while passing from the office or place of business where the purchase was made to the train, to take his seat in one of the cars of which it consists, as a passenger; and that the defendants were bound to exercise the same degree of care in providing for him a safe and convenient way and manner of access to the train, and in preventing the interposition of any obstacle or obstruction which would unreasonably impede him or expose him to

harm or injury while proceeding to take his seat in the cars, as in the subsequent transportation and carriage of him." We think this instruction, though not strictly correct as a general proposition applicable to 'all cases of the kind, was not erroneous, if taken with the qualifications which the particular case afforded, and which must have been obviously understood as included in it. As a general statement it was too broad, because a passenger may buy his ticket at an office which is not in the same town, or even in the same state, in which he intends to take the cars. The railroad company have no control over his movements, and he does not, by the purchase of a ticket, put himself under their charge. But if he is " passing from the office or place of business where the purchase was made to the train, to take his seat in the cars," on the premises belonging to the company, connected with the railroad, and under the direction of the company's agents, given to him as a passenger with whom the company have made the contract for conveyance which the purchase of the ticket creates, as was the case with the plaintiff, we think he is to be considered as a passenger, and entitled to the rights of a passenger while so passing. It is the duty of the railroad company to afford to the passengers whom they undertake to carry in their cars a reasonable and safe opportunity to pass from the room or building in which they receive passengers for transportation, to the cars, when the proper time comes for them to take their seats. The purchasers of tickets are bound to comply with all reasonable rules and orders of the company or their agents, as much when going to the cars from the station house, or from the cars to a place of safety beyond the railroad track, as they are when actually on board the train, and while the transit continues. The instruction to the jury, therefore, seems to have been sufficiently adapted to the circumstances of the case, and this exception cannot be sustained.

The remaining exception was taken to the terms in which the judge who presided at the trial defined the degree of care which the law imposes upon carriers of passengers for hire. The language used was precisely that in which the rule of law was

laid down by this court in the case of *Ingalls* v. *Bills*, 9 Met. 1. Upon a full examination and review of the English and Amer- ican cases, Mr. Justice Hubbard in that case declared the result to be " that carriers of passengers for hire are bound to use the utmost care and diligence in the providing of safe, sufficient and suitable coaches, harnesses, horses and coachmen, in order to prevent those injuries which human care and foresight can guard against ; " and the change of phraseology in the case at bar was only that required to adapt this rule to the circumstances of the carriage of passengers by railroad.

The rule in its full extent has been recognized and affirmed in several subsequent decisions. *McElroy* v. *Nashua & Lowell Railroad*, 4 Cush. 400. *Schopman* v. *Boston & Worcester Rail- road*, 9 Cush. 24. The carriers of passengers are not, like the carriers of goods, insurers against everything but the act of God and public enemies. But they are bound to exercise reasona- ble care, according to the nature of their contract; and as their contract involves the safety of the lives and limbs of their pas- sengers, the law requires the highest degree of care which is con- sistent with the nature of their undertaking.

The defendants object that they cannot be held to the exer- cise of the utmost care and diligence which human care and foresight are capable of. But such was not the language of the court. They were only held to the utmost care in providing suitable and proper carriages, engines, tracks and agents, in order to prevent those injuries which human care and foresight can guard against. The object is to prevent such injuries as are the subject of human care and foresight; that is, such as are not inevitable. The duty is to use the utmost care in regard to the ordinary and usual appliances and means of carrying on their business. They are not to take every possible precaution to prevent injury ; for that would be inconsistent with the cheap- ness and speed which are among the chief objects of railway travelling. But their care is to be exercised in relation to such matters and in such ways as are appropriate to the business they have undertaken, to afford proper and reasonable securi- ties against danger ; and it is only in regard to these, from the

importance of the interests involved, that they are held to a pro-
portionate, that is, to the utmost care and diligence.

*Exceptions overruled.*